**884**

**SCOBEY MOVING AND STORAGE CO.,**
**Appellant,**

v.

**Mary Rose TURNER, Appellee.**

**No. 7518.**

Court of Civil Appeals of Texas,
Beaumont.

Nov. 21, 1973.

Rehearing Denied Dec. 13, 1973.

Joe Meador, San Antonio, for appellant.

Schweppe, Schweppe & Allison, San Antonio, for appellee.

STEPHENSON, Justice.

This is an action for damages for conversion of certain household goods and other personal property. Trial was by jury and judgment non obstante veredicto was rendered for plaintiff. The parties will be referred to here as they were in the trial court or by name.

The uncontroverted facts show the following: Plaintiff, Mary Rose Turner, and defendant, Thomas L. Magee, were husband and wife, living out of the state, and decided to move to Texas. He had been discharged from the service, and their household goods were shipped to San Antonio by a Government bill of lading issued in both of their names. The goods were stored at the warehouse of defendant, Scobey Moving and Storage Company (hereinafter called Scobey). The Government was paying the cost of storage for the first ninety days from April 15, 1968. About ninety days after the goods were stored, a warehouse receipt was issued by Scobey, dated April 15, 1968, covering such goods and was mailed to plaintiff. It was issued in the names "Mr. and/or Mrs. Thomas L. Magee." He moved to Texas, but plaintiff did not because they decided to get a divorce in the meantime. He and plaintiff agreed that the goods

should be transferred back to her, and he gave a written release to Scobey on May 22, 1968. Plaintiff gave Scobey moving instructions, but then cancelled them in July, 1968. When the charges for the first month's storage came due, Scobey mailed the statement to plaintiff. This she paid September 1, 1968. The goods remained at Scobey's some five or six months during which time there were several "ins" and "outs." Plaintiff came to San Antonio in July, 1968 and advised Scobey not to release the goods to her husband. On August 15, 1968, she wrote a letter to Scobey to that effect; Scobey acknowledged receipt of that letter. In September, 1968, Thomas E. Magee, father of Thomas L. Magee, delivered to Scobey a written authorization signed "Mary R. Magee" to her husband or his representative releasing the goods. The father also had a written authorization to him from his son, and he paid the storage charges due. The goods were delivered to the father. The warehouse receipt remained in plaintiff's possession. Her husband signed her name to the written authorization without her consent.

The jury answered, "We do not" to Special Issue No. 1, asking whether or not Mary Rose Magee and Thomas L. Magee agreed on or about May 21, 1968, that the goods were to become her separate property. The jury found: That Scobey acted in good faith and in observance of reasonable commercial standards in releasing the goods September 18, 1968; That Scobey exercised such care as a reasonably careful person would have exercised under like circumstances; That the forged letter of August 15, 1968, was not the sole cause of the delivery of the goods.

Scobey's points of error complain of the action of the trial court in granting the judgment for plaintiff non obstante veredicto because the evidence supports the findings by the jury. Plaintiff contends the trial court acted properly, because the undisputed evidence shows that Scobey violated the terms of its written contract, the warehouse receipt, by delivery of the goods to a third party, and that the jury findings set out above are immaterial.

Following a study of the statement of facts in this case, and inasmuch as plaintiff has not seriously challenged Scobey's points of error from an evidentiary standpoint, we conclude that there is evidence to support the findings of the jury. We proceed to consider the contention made by plaintiff that she is entitled to judgment as a matter of law.

The warehouse receipt has written at the top "Not Negotiable" and contains the following provision:

"TRANSFER OR WITHDRAWAL OF GOODS. The warehouse receipt is not negotiable and shall be produced and all charges must be paid before delivery to the Depositor, or transfer of goods to another person; no such transfer of goods to another person shall be effective until the Company has been duly notified thereof in writing, the old receipts taken up, and the new one issued."

It is undisputed that the warehouse receipt was not produced at the time Scobey permitted Thomas E. Magee to withdraw the goods from storage.

Apparently there are few cases in this state involving warehouse receipts. Plaintiff cites: Rex v. James, 62 Tex.Civ.App. 238, 131 S.W. 248 (Fort Worth, 1910, no writ); Morris v. Burrows, 180 S.W. 1108 (Tex.Civ.App., Texarkana, 1915, no writ); Citizens' Nat. Bank v. Texas Compress Co., 294 S.W. 331 (Tex.Civ.App., Austin, 1927, error refused); First Nat. Bank v. Mineola State Bank, 155 S.W. 603 (Tex. Civ.App., Dallas, 1913, error refused); First Nat. Bank of Fort Worth v. Donald, 84 S. W.2d 325 (Tex.Civ.App., Fort Worth, 1935, dismissed), and Mims v. Hearon, 248 S.W. 2d 754 (Tex.Civ.App., Dallas, 1952, no writ). We have made a careful study of each of these cases and find that none of them control the specific question before us.

All the foregoing cases were decided long before the adoption of the Uniform Commercial Code, also known as the Business and Commerce Code, which became effective September 1, 1967, which was before this cause of action arose.

V.T.C.A., Uniform Commercial Code, § 7.202, provides that a warehouse receipt needs not be in any particular form. It then says the warehouseman is liable for damages caused by the omission of nine listed provisions, to a person injured, but none of the nine have reference to negotiability or transferability except (b)(4) which reads in part as follows:

"a statement whether the goods received will be delivered to the bearer, to a specified person, or to a specified person or his order."

§ 7.204 of the Code reads in part as follows:

"(a) A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care."

We have come to the conclusion that this case is controlled by the last section of the code quoted above. Scobey's liability is to be measured by ordinary care standards. The uncontroverted evidence given by three expert witnesses, only one of which was connected with Scobey, shows the following: That the usual and customary practice in the warehouse business is to release the stored goods upon payment of the charges, to the persons named in the warehouse receipt, or either of them, with or without the production of the warehouse receipt. It is the custom to release the goods to either the husband or the wife unless there is a restraining order. The warehouse receipt in this case is the standard form used.

As stated above, the jury found that Scobey exercised such care as a reasonably careful person would have exercised. This is all that was required of them; and, there being evidence to support that finding, they were entitled to judgment in their favor, that plaintiff take nothing.

Reversed and rendered.