Mary Rose **TURNER**, Petitioner,

v.

**SCOBEY MOVING AND STORAGE COMPANY**, Respondent.

No. B–4419.

Supreme Court of Texas.

July 24, 1974.

Allison & Davies, S. Benton Davies, Jr., San Antonio, for petitioner.

Joe Meador, San Antonio, for respondent.

STEAKLEY, Justice.

This is a suit by Petitioner, Mary Rose Turner, against Respondent, Scobey Moving & Storage Company, a public warehouseman. It is for conversion of household goods and other personal property released by Scobey to a third party upon a forged written authorization and without requiring production of the non-negotiable warehouse receipt issued by Scobey upon deposit of the goods.

Trial was to a jury which found that Scobey acted in good faith and in observance of responsible commercial standards in releasing the property. Judgment non obstante veredicto was rendered by the trial court for petitioner in the sum of $5,275, the value of the goods as found by the jury. The Court of Civil Appeals reversed and rendered judgment that Petitioner take nothing. 502 S.W.2d 884. We reverse that judgment and affirm that of the trial court.

The goods in question were originally stored with Scobey by Mary Rose and her husband. A warehouse receipt was issued in their names and mailed to her. She paid the storage charges when due. Mary Rose and her husband later decided upon divorce proceedings and the husband gave a written release to Scobey. Thereafter Mary Rose advised Scobey not to release the goods to her husband and Scobey acknowledged receipt of this instruction. Later, Scobey released the goods to the father of the husband upon an authorization in the name of Mary Rose forged by the husband, and without production of the warehouse receipt. The warehouse receipt was at all times in the possession of Mary Rose.

The Court of Civil Appeals was of the view that the following provisions of § 7.-204 of the Texas Business & Commerce Code, Vernon's Texas Codes Annotated are controlling:

§ 7.204. Duty of Care; Contractual Limitation of Warehouseman's Liability

(a) A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.

Upon this premise the intermediate court concluded that Scobey was only required to exercise such care as a responsible person would have exercised and that there was evidence to support the jury finding that it did so. We will assume for purposes of decision that Scobey was entitled to judgment if § 7.204 of the Code is applicable and Scobey's liability is to be measured by ordinary care standards. The question thus narrows to whether Mary Rose was entitled to judgment as a matter of law by reason of Scobey's delivering the property to a third party under the undisputed circumstances and without requiring production of the warehouse receipt. We have not been cited to a decision directly in point and have found none in our research.

The warehouse receipt in question contained the following provision:

"TRANSFER OR WITHDRAWAL OF GOODS. *The warehouse receipt* is not negotiable and *shall be produced* and all charges must be paid *before delivery to the Depositor, or transfer of goods to another person*; no such transfer of goods to another person shall be effective until the Company has been duly no-

tified thereof in writing, the old receipts taken up, and the new one issued." *

§ 7.403 of the Business and Commerce Code defines the obligation of a warehouseman as follows:

"(a) *The bailee must deliver the goods to a person entitled under the document* who complies with Subsections (b) and (c) [not involved here], unless and to the extent that the bailee establishes any of the following:

. . . [not involved here] . . .

. . . . . .

(d) '*Person entitled under the document'* *means* holder in the case of a negotiable document, or *the person to whom delivery is to be made by the terms of or pursuant to written instructions under a non-negotiable document.*"

■ In our view, § 7.204(a) is not applicable to an unauthorized delivery of goods to a person not producing the warehouse receipt. § 7.204(a) speaks of "damages for loss of or injury to the goods" and not to damages suffered by the holder of a warehouse receipt occasioned by the delivery of the goods by the warehouseman to an unauthorized third party. "Loss of or injury to the goods" in accepted usage in this context refers to loss by fire or theft or like causes. Moreover, the non-liability of the warehouseman for damages which could not have been avoided by the exercise of due care is made expressly subject to the condition "unless otherwise agreed." Here, it was expressly agreed in the warehouse receipt, the contract between the parties, that the receipt is not negotiable and shall be produced before delivery of the goods to the depositor or the transfer of the goods to another person; and that no transfer of goods to another person shall be effective until the old receipts are taken up and a new one issued.

The applicability of § 7.403 to the instant controversy, rather than § 7.204, is additionally confirmed by the provisions of § 7.404:

§ 7.404. No Liability for Good Faith Delivery Pursuant to Receipt or Bill

A bailee who in good faith including observance of reasonable commercial standards has received goods and delivered or otherwise disposed of them *according to the terms of the document of title* or pursuant to this chapter is not liable therefor. This rule applies even though the person from whom he received the goods had no authority to procure the document or to dispose of the goods and even though the person to whom he delivered the goods had no authority to receive them.

The exoneration of the warehouseman from liability upon a showing of good faith, including observances of reasonable commercial standards, is conditioned by § 7.404 on the delivery or disposition of the goods "according to the terms of the document of title" i. e., the warehouse receipt. The further exoneration in the second sentence of § 7.404, i. e., delivery of the goods to a person having no authority to receive them, presupposes production of the warehouse receipt, as required by the document of title, at the time the goods are delivered.

■ It is the contention of Scobey in its brief that delivery of the property to the third party was made in reliance upon § 7.-403 of the Code, and that, under the facts here, it was under a mandatory obligation to do so. Scobey seems to be saying that it was under statutory obligation to deliver the goods to either Mary Rose or her husband, upon demand, and regardless of the non-production of the warehouse receipt. But the argument is that since the goods were originally delivered for storage in the name of Petitioner and her husband, and notwithstanding the terms of the warehouse receipt and its non-production, as

* Italics are added for emphasis.

well as Petitioner's specific request that Scobey not release the goods to her husband, Scobey was nevertheless under obligation to release the goods to the father of the husband upon the basis of the order forged by the husband. It is manifest that this argument renders meaningless the contractual requirement that the warehouse receipt be produced before delivery of the goods to the depositor, or their transfer to another person. It also flies in the face of § 7.403 that imposed on Scobey the obligation of delivering the goods to the person to whom delivery is to be made under the terms of the document of title, i. e., to the person producing the warehouse receipt.

We will also notice the contention advanced by Scobey in oral argument, although not contained in its written brief, that the contractual provision requiring production of the receipt as a condition to delivery of the goods is for its benefit and is overriden by proof of commercial custom of disregarding the requirement. It may well be that production of the receipt is principally for the protection of the warehouseman, and that such is often ignored at its election; however, the requirement on its face carries the assurance to the depositor that possession of the receipt secures the goods against delivery to an unauthorized third party and hence also inures to the benefit of the depositor. The custom among warehousemen, whatever it may be, cannot be regarded as within the common knowledge of depositors and they are entitled to take the requirement, and the measure of protection afforded thereby, at its face value. Sanction cannot be given the idea that express contractual provisions may be unilaterally disregarded by one party when to do so is in its interest. Scobey must be held to have done so at its risk under the facts here.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.