### UTICA NATIONAL BANK & TRUST COMPANY, Plaintiff-Appellee,

v.

### HAPPY WHEAT GROWERS, INC., Defendant,

Lawrence Systems, Inc., Defendant-Appellant.

No. 75–3305.

United States Court of Appeals, Fifth Circuit.

Aug. 29, 1977.

---

Jess C. Dickie, Amarillo, Tex., Marvin Schulman, Houston, Tex., for defendant-appellant.

Robert H. Smith, Amarillo, Tex., William C. Anderson, Tulsa, Okl., for plaintiff-appellee.

Before GODBOLD, TJOFLAT and HILL, Circuit Judges.

GODBOLD, Circuit Judge:

This case involves a dispute between a warehouseman and a secured party over who shall bear the loss for 238 head of warehoused cattle. The warehouseman delivered the cattle to a third party authorized by the owner-debtor to sell them. They were sold for the account of the debtor, and the secured party never received the proceeds.

Cattle belonging to Three S Cattle Company ("3S") were placed in a field warehouse in Texas. A field warehouse is a security device that antedates the Uniform Commercial Code. Under a typical field warehouse arrangement, a borrower "leases" part of his premises to the field warehouseman who basically manages the inventory for the benefit of the lender, often via nonnegotiable warehouse receipts issued in favor of the lender. The conditions under which goods are to be released from the field warehouse vary widely according to the degree of supervision the lender wishes to exercise over his borrower. For an extended discussion of the device see 1 G. Gilmore, Security Interests In Personal Property §§ 6.1–2 (1965).

In this case the field warehouseman was Lawrence Systems, Inc. The warehouse was not located on the borrower's premises but on the feed lot of Happy Wheat Growers, Inc., a feed lot operator. The debtor was 3S. The secured party was Utica National Bank and Trust Company.

Lawrence, pursuant to a livestock agency agreement between it and 3S, issued to Utica two nonnegotiable warehouse receipts covering the 3S cattle located in the Lawrence-operated field warehouse. The receipts provided that upon written instruction of Utica the cattle were to be delivered without surrender of the warehouse receipts. Subsequently Utica issued a letter, dated February 12, 1973, authorizing Lawrence to release the cattle. The operative language of this letter read:

> You are authorized to and may in your discretion from time to time deliver livestock held in storage in your warehouses, covered by non-negotiable warehouse receipts under the three following conditions:
>
> (1) Not later than the next business day after delivery of livestock you are to forward your usual form of Confirmation of Delivery showing the following information:

Number of head: ____
Date shipped: ____
Weight: ____ Average ____
Price: ____
Purchaser: ____

> (2) Railed livestock, Realizers Sales, and/or Culled livestock are to be reported on your usual form of Confirmation of Delivery at least once each week following such shipments, said Confirmations are to show the following information:

Number of head: ____
Date shipped: ____
Weight: ____ Average ____
Purchaser: ____

> (3) Death losses shall be reported weekly by sending to the undersigned a copy of a Certified Death Ticket showing the owner's name, Lot number, and Warehouse Receipt Number. It is understood by the undersigned that the total death losses will be reported on the final Confirmation of Delivery issued for each Warehouse Receipt.

Lawrence delivered the 3S cattle in five lots to Happy which was to, and did, sell them. Delivery was a mere formality since Lawrence's field warehouse was located right in the Happy feed lot. Moreover, delivery of cattle to Happy and the release of the cattle by Happy to the purchaser always occurred simultaneously. However, Lawrence was late in mailing the confirmations of delivery required by paragraph (1) of the letter. Although the cattle were sold, neither Happy nor 3S remitted the proceeds to Utica. Utica brought suit against Lawrence and Happy (currently bankrupt and not a party to this appeal) for the value of the cattle. Under Fed.R.Civ.P. 49(a) a jury returned special findings in favor of Utica, and the court entered judgment for Utica in the amount of $86,810.24. Lawrence appeals.

The jury found that the letter of February 12 was intended to serve as written instructions concerning the release of the cattle; that Lawrence failed to give notice of the release of the cattle in the time required by the letter; that Utica was damaged by the failure to give timely notice;

and that the market value of the cattle was $80,680.87. Lawrence agrees with the jury's finding that the letter of February 12 covered the cattle, and it does not seriously dispute that it failed to mail the confirmations of delivery within the time specified in the letter. However, we agree with Lawrence that the court did not properly instruct the jury on the law of damages, and we reverse and remand for a new trial on damages.

■ The trial judge denied Lawrence's request for an instruction dealing with whether Utica's damages were caused by Lawrence's failure to give timely confirmations of delivery. The appellee argues that causation of damages need not be proved as part of its cause of action. It maintains that Lawrence, as a bailee, misdelivered Utica's goods and thus was liable for conversion. Generally, a warehouseman is absolutely liable for misdelivery of a storer's goods, that is, the storer is entitled to the monetary value of the goods regardless of whether the misdelivery is the proximate cause of the storer's loss and the warehouseman's liability is not excused by his exercise of due care. Texas follows this general rule. *See Gabbert v. Miller*, 258 S.W.2d 383, 384 (Tex.Civ.App., 1952); *McDonald v. Leonard Bros.*, 134 S.W.2d 460, 463 (Tex.Civ.App., 1939), *writ dismissed w.o.j.* Thus, if the cattle were misdelivered, the trial judge would have been correct in refusing to include a special issue on causation of damages—Utica would be entitled to recover the value of the cattle even in the absence of proof that its losses were the proximate result of Lawrence's failure to mail the confirmations on time. If, on the other hand, there was no misdelivery, Utica would have only an action for breach of contract,[1] with its requirement that any general damages be proved to be the probable result of the breach.

In *Turner v. Scobey Moving and Storage Co.*, 515 S.W.2d 253 (Tex., 1974), the Supreme Court of Texas pointed out that § 7–403 of the Uniform Commercial Code, Tex.

Bus. & Com. Code Ann. § 7.403, governs the obligation of a warehouseman to redeliver the goods under his care. In part, § 7.403 provides:

(a) The bailee must deliver the goods to a person entitled under the document who complies with Subsections (b) and (c), unless and to the extent that the bailee establishes any of the following:

\* \* \*

(d) "Person entitled under the document" means holder in the case of a negotiable document, or the person to whom delivery is to be made by the terms of or pursuant to written instructions under a nonnegotiable document.

Under the letter of February 12, which the jury found to be the controlling document, Lawrence was authorized to deliver the cattle to Happy. However, Utica argues that Lawrence's failure to send Utica timely confirmations of deliveries divested Lawrence of its authority to make those deliveries. In essence, Utica contends that the language of paragraph (1) of the letter, quoted above, was not a covenant or promise but was a condition subsequent to Lawrence's authority to release the cattle. We cannot agree with this position.

In *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1 (Tex., 1976), the Supreme Court of Texas dealt with the differences between covenants and conditions. The court held that words such as "if", "provided that", and "on condition that" usually connote a condition, but went on to say:

However, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result then the agreement will be interpreted as creating a covenant rather than a condition.

537 S.W.2d at 3.

Construing paragraph (1) as a condition would lead to the type of absurd or impossible result which the court in *Hohenberg* condemned. We see no logical nexus be-

---

1. Although Utica alleged in its complaint that Lawrence was negligent in delivering the cattle, Utica never requested a jury instruction on negligence.

tween forwarding a confirmation by mail on the next business day after a delivery and the validity of the delivery which has already taken place. It is instructive to compare the facts in the case at bar and those in *Turner v. Scobey Moving and Storage Co.* In *Turner* the warehouseman released the storer's goods upon a forged authorization without requiring production of the nonnegotiable warehouse receipt. The receipt provided that a person seeking release of the stored goods had to present the receipt before the goods could be handed over. Unlike the confirmation of delivery provision in the letter of February 12, the presentation of the receipt requirement in *Turner* was an act which had to be performed before delivery occurred and bore a logical relationship to the validity of the delivery by furnishing protection against misdelivery.

We hold, therefore, that the requirement of forwarding confirmation of delivery by the next business day was an independent covenant and that there was no misdelivery by Lawrence. Nonetheless, the jury found on the basis of substantial evidence that Lawrence failed to fulfill its contractual duty to send Utica timely confirmations. This gives rise to liability on the part of Lawrence for breach of contract. However, as in any contract action, Utica must prove that any general or proximate damages it seeks were foreseeable, at the time of contract formation, as the probable result of Lawrence's breach.[2] *Le-Blanc, Inc. v. Gulf Bitulithic Co.,* 412 S.W.2d 86, 94 (Tex.Civ.App., 1967), *writ refused n.r.e.; Beasley Motor Co. v. Woodward,* 154 S.W.2d 691, 693 (Tex.Civ.App., 1941); *Humble Oil & Refining Co. v. Wood,* 292 S.W. 200, 201 (Tex.Com.App., 1927). The special verdict on causation of damages requested by Lawrence addressed whether Utica's losses were caused by Lawrence's breach. The trial court's rejection of it was reversible error.

Lawrence's other assignments of error are either without merit or mooted by our reversal and remand on the issue of damages. Lawrence claims that the admission of plaintiff's Exhibit 50 constituted reversible error because it was irrelevant and prejudicial. This exhibit was a receipt issued by Lawrence's field warehouse manager to Lawrence. In part it stated:

> I realize that to issue or sign such original warehouse receipt and the copies thereof or to release such commodities otherwise than in accordance with such written instructions violates the terms of my employment by Lawrence Systems, Inc. and constitutes a fraud upon that company and the holders of its warehouse receipts.

This document was relevant to show that Lawrence was aware of its obligation to release stored goods only in accordance with the written instructions it received. It was also relevant to the charge that Lawrence was negligent. We agree with the trial judge that there was insufficient evidence that Utica waived the timely sending of confirmations to justify sending the issue of waiver to the jury. Lawrence's claim that the jury's finding on the value of the cattle was not supported by the evidence is mooted by our remand on the issue of damages.

In summary, we affirm the jury's findings on the scope of the letter of February 12 and on Lawrence's failure to send Utica timely confirmations. We reverse on the issue of damages and remand for a new trial limited to the issue of the existence, type, and amount of damages to which Utica is entitled because of Lawrence's breach of contract.

AFFIRMED in part, REVERSED in part and REMANDED.

---

2. Even if Utica fails to prove any general damages, it is entitled under Texas law to nominal damages. *Atomic Fuel Extraction Corp. v.*

*Slick's Estate,* 386 S.W.2d 180, 190 (Tex.Civ. App., 1964), *writ refused n.r.e.*