Ignacio OJEDA, Appellant,

v.

WAL–MART STORES, INC., d/b/a Sam's Club, Appellee.

No. 04–96–00569–CV.

Court of Appeals of Texas, San Antonio.

Nov. 5, 1997.

Rehearing Overruled Dec. 11, 1997.

Guadalupe Castillo, C.M. Zaffirini, Zaffirini & Castillo, Laredo, for Appellant.

Charles R. Borchers, Cristina Gonzalez, Person, Whitworth, Ramos, Borchers & Morales, Laredo, for Appellee.

Before STONE, GREEN and ANGELINI, JJ.

## OPINION

GREEN, Justice.

This appeal arises from a suit filed by Ignacio Ojeda, appellant, against Wal–Mart Stores, Inc., doing business as Sam's Club ("Sam's"), appellee, for breach of contract, conversion, and negligence. The trial court directed verdict for Sam's on the issues of conversion and negligence, and a jury found no breach of contract. In two points of error, Ojeda challenges the trial court's directed verdict for Sam's on the conversion issue and its rulings on his post-trial motions. We affirm the trial court's judgment because Ojeda failed to present some evidence on each element of conversion, and because the evidence was both factually and legally sufficient to support the jury's determination that Sam's fulfilled its contract obligation.

### Factual and Procedural Background

Ignacio Ojeda, a grocer in Mexico, often acquired inventory in the United States. Ojeda always used a transfer agent for these large purchases. Members of Sam's who purchase large shipments bound for Mexico typically hire transfer agents to arrange the loading, shipment, and customs transactions for their merchandise. These agents engage a loader at the Sam's warehouse, secure a trailer and driver to move the merchandise,

hire a customs broker to get the goods over the border, and see that the goods reach their ultimate destination.

Prior to December 1993, Ojeda employed Jose Arredondo as his transfer agent. Jose Arredondo always used his brother, Fernando, as his loader. A Sam's employee would move the merchandise to the designated trailer and assist Fernando in loading the merchandise. Then Fernando would sign Sam's' informal, non-negotiable bill of lading and tally sheet, indicating the quantity received. The transfer agent was hardly ever on the scene during loading, and the loader's receipt of and signing for the merchandise was an accepted method of transferring the goods.

In December 1993, Ojeda arranged to purchase a particular brand of hair spray from Sam's, as he had on many prior occasions. Ojeda and Sam's agreed on a price and amount, and Ojeda notified Sam's that Javier Hernandez would receive the goods, rather than his usual transfer agent, Jose Arredondo. Ojeda wired the purchase money to the store. Sam's made the merchandise available at its warehouse, which it leased from another company, and assisted in the loading of the merchandise onto the trailer designated by Hernandez.

Like Jose Arredondo, Hernandez was in the practice of using Fernando Arredondo as his loader. Ojeda instructed Mary Lara, an employee in Sam's export office, to release the hair spray to Hernández, and she made a notation to that effect in her office's file. The export office faxed a release to the warehouse, indicating who would be authorized to receive the merchandise and when and on what trailer it was to be loaded. Upon receipt of the fax, Juan Hinojosa, a supervisor at the export dock, prepared the merchandise for transfer.

Fernando Arredondo testified at trial that he had spoken with Hernandez on that day, and they agreed Arredondo would load the hair spray. Both Lara and Hinojosa testified that when Arredondo informed Hinojosa that he would receive and load the hair spray, Hinojosa called the export office and spoke to Lara to verify that Arredondo did in fact have Hernandez's authorization to accept and

load the merchandise. Lara in turn phoned Hernandez for instruction. Hernandez "told her that it was OK to use the same loaders." After loading the hair spray onto the trailer designated by Hernandez, Fernando Arredondo signed the tally sheet and the informal bill of lading.

After the merchandise was loaded onto the trailer designated by Hernandez, and at some point before the trailer doors were shut and locked, Hernandez arrived at the warehouse. Arredondo testified, and Ojeda's testimony seems to confirm, Hernandez saw the goods and instructed the driver not to move the merchandise until the following morning. He was concerned the truck was overweight and reasoned it would be easier to cross the border early the following Saturday morning. Accordingly, the truck was parked overnight in the lot surrounding the warehouse.

When the driver arrived the next morning, he observed one of the tires was flat and that the truck could not be moved. Because the flat could not have been fixed in time for the truck to cross the border that morning, the truck would have to sit in the lot until it could be fixed and moved the following Monday. When the truck driver returned on Monday, he could not locate the trailer because it had been stolen. The empty trailer was located several days later.

Ojeda filed suit against Sam's for breach of contract, conversion, and negligence. The case proceeded to trial on all three issues; and, at the close of Ojeda's case, Sam's moved for a directed verdict. The court granted the motion on the conversion and negligence issues, on the ground that no evidence had been presented in support of either claim. On the contract issue, the jury unanimously found that Ojeda and Sam's had an agreement for the "delivery" of the goods and that Sam's performed.

### Directed Verdict on the Conversion Issue

In his first point, Ojeda contends the trial court erred by directing verdict on the issue of conversion. He argues that misdelivery of goods constitutes conversion. The evidence conclusively shows, he urges, that because Javier Hernandez did not personally sign for

and assume control of the merchandise, Sam's delivered the merchandise to one other than his agent. Accordingly, Ojeda maintains that Sam's converted his property.

Sam's replies that the evidence conclusively shows proper delivery. Ojeda's agent, employed throughout a course of dealing, received the goods for him. Further, Sam's maintains, there is no evidence of wrongful exercise of control over the property. Sam's properly delivered the merchandise, and at the time of delivery, the risk of loss passed to Ojeda, the buyer. More importantly, Sam's argues, Ojeda misread Texas precedent in constructing his theory of conversion because misdelivery does not apply in this case.

In deciding whether the trial court properly directed a verdict in this case, we view the evidence in the light most favorable to Ojeda, the party against whom the verdict was rendered, and we disregard all contrary evidence and inferences. *Qantel Business Sys. v. Custom Controls,* 761 S.W.2d 302, 303 (Tex.1988); *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983). If in our review we encounter any evidence of probative worth, raising a material fact issue, then we must reverse the judgment and remand the case for a jury finding on the issue. *Qantel Business Sys.,* 761 S.W.2d at 304; *White,* 651 S.W.2d at 262. Where reasonable minds may differ as to the truth of controlling facts, a jury issue is presented. *Henderson v. Travelers Ins. Co.,* 544 S.W.2d 649, 650 (Tex.1976). When reasonable minds could draw only one conclusion from the evidence, directed verdict is proper. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978).

■ On appeal, the appellant carries the burden of establishing that he presented some evidence on each element of his cause of action. *Ortiz v. Santa Rosa Med. Ctr.,* 702 S.W.2d 701, 703 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Guynn v. Corpus Christi Bank & Trust,* 589 S.W.2d 764, 770 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd w.o.j.). "The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion." *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex.1971); *see also Killian v. Trans Union Leasing Corp.,* 657 S.W.2d 189, 192 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). In support of his claim, plaintiff must prove: (1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property. *Apple Imports, Inc. v. Koole,* 945 S.W.2d 895, 899 (Tex.App.—Austin 1997, writ denied); *Whitaker v. Bank of El Paso,* 850 S.W.2d 757, 760 (Tex.App.—El Paso 1993, no writ).

■ Ojeda presents a terse argument on appeal: Sam's misdelivered his property; misdelivery constitutes conversion; therefore, Sam's committed conversion. While misdelivery can be a conversion, Ojeda misapplies the law to his case. It is a well-settled principle of tort law that misdelivery *by a warehouseman, bailor, or carrier* is a conversion. *See* RESTATEMENT (SECOND) OF TORTS § 234 (1965) (discussing misdelivery by bailee as conversion). The Texas Supreme Court adheres to this theory. *See Central Meat Mkt. v. Longwell's Transfer, Inc.,* 62 S.W.2d 87, 89 (Tex. Comm'n App. 1933, holding approved) (holding that misdelivery of property by a bailee, warehouseman, or common carrier to a person not authorized by the true owner is a conversion); *see also Turner v. Scobey Moving & Storage Co.,* 515 S.W.2d 253, 255 (Tex.1974) (finding liability for conversion where warehouseman released goods to a third party without requiring production of receipt as required by statute). The difference between this case and *Central Meat Market* and *Turner* lies in the relationship of the parties. The relationships in those cases implicated entrustment. *See Central Meat Mkt.,* 62 S.W.2d at 89; *Turner,* 515 S.W.2d at 254–55. The relationship between Ojeda and Sam's, however, was that of buyer and seller.

■ In support of his misdelivery argument, Ojeda refers us to Section 7.403 of the Texas Business and Commerce Code, enti-

tled "Obligation of Warehouseman or Carrier to Deliver; Excuse". *See generally* TEX. BUS. & COM.CODE ANN. § 7.403 (Vernon 1991). We find that section inapplicable for there was no evidence presented at trial that Ojeda and Sam's entered into a contract for storage or shipment. The source of Ojeda's confusion seems to lie in his interpretation of the term "delivery." Sam's' obligation to deliver goods to Ojeda arose not from an agreement to store or ship but an agreement to sell. In the context of entrustment, "delivery" signifies a transfer of possession. *See* TEX. BUS. & COM.CODE ANN. § 7.102(a)(1) (Vernon 1991) (defining "bailee" as one who by document of title acknowledges possession of goods and contracts to deliver them). The meaning of "delivery" in the context of a sale of goods finds significance in transferring ownership in addition to possession. *See* TEX. BUS. & COM.CODE ANN. § 2.401 (Vernon 1994) (stating that seller's title to goods passes to buyer when seller completes his performance with respect to physical delivery of the goods). Therefore, under the facts of this case, any claim of misdelivery on the part of Sam's would go to the issue of breach of a sales contract, rather than to the tort of conversion.

The trial court's assessment of Ojeda's case for conversion was correct because Ojeda failed to present some evidence in support of each element of his claim. In particular, there was no evidence that Sam's assumed and exercised dominion and control over Ojeda's property in an unlawful and unauthorized manner. The record indicates that Javier Hernandez, Ojeda's agent, received the goods. At that point, the property became Ojeda's. After Sam's finished helping to load the merchandise onto the trailer designated by Hernandez, it had nothing further to do with the goods. Accordingly, Ojeda could not have maintained a claim of conversion against Sam's because he presented no evidence that Sam's exercised control over his property in a wrongful manner. Thus, we overrule Ojeda's first point of error.

### Sufficiency of the Evidence

In his second point of error, Ojeda maintains the trial court erred by overruling his motion to disregard the jury's findings on the contract claim and by denying his motion for new trial. He contests the rulings on both legal and factual sufficiency grounds. Sam's replies that the evidence was both legally and factually sufficient to support the jury's findings. We agree with Sam's.

### 1. Legal Sufficiency

■ Where the appellant attacks the legal sufficiency of an adverse fact finding on an issue on which he bore the burden of proof, he must pass a two-prong test. We first review only the evidence and inferences lending support to the jury's finding and disregard all contrary evidence and inferences. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *2 Fat Guys Investment, Inc. v. Klaver*, 928 S.W.2d 268, 271 (Tex.App.—San Antonio 1996, no writ). We must uphold the jury's finding where more than a scintilla of evidence exists to support it. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). More than a scintilla exists where the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994). If we encounter no evidence in support of the finding, we next examine the entire record to see if the opposite position is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982).

■ Because we believe ample evidence exists to support the jury's verdict, we go no further than the initial inquiry. Trial testimony supported the findings by the jury that the parties agreed Sam's would deliver the hair spray to Ojeda, or his representative, at the warehouse leased by Sam's and that the transaction occurred as planned. Ojeda stated that for each of his many purchases from Sam's, he had always used a transfer agent and that he never involved himself in the details of receiving and loading merchandise. Both Ojeda and Mary Lara, the Sam's employee who handled this transaction, testified that it was agreed Javier Hernandez would receive the merchandise for Ojeda.

That Hernandez did not sign for the merchandise himself is not dispositive. Ample testimony supports the finding that Hernandez's agent received the goods for him and that Hernandez later assumed physical control personally. Fernando Arredondo stated that he frequently loaded merchandise for Hernandez and other transfer agents, and that he, Arredondo, always signed for the merchandise at time of pick-up. Testimony of Lara, Arredondo, and Hinojosa conveyed that Arredondo and Hernandez agreed that Arredondo would be responsible for receiving and loading the merchandise in his stead. Lara and Hinojosa stated that they contacted Hernandez and received verification of Arredondo's authority to receive the merchandise. Finally, Arredondo testified that Hernandez came on the scene later that day, observed the merchandise in the truck, and ordered that the merchandise not be moved until Saturday morning. Ojeda's own testimony suggested the same. We believe the record contains more than a scintilla of evidence that no breach of contract occurred.

## 2. Factual Sufficiency

We consider and weigh all of the evidence to review factual sufficiency, and we set aside the jury's verdict only if it is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Considering all of the evidence produced at trial, we do not believe the jury's verdict to be against the great weight and preponderance of the evidence. Testimony from several witnesses showed the merchandise was received by Hernandez's loader and was placed inside the trailer procured by Hernandez. Further, trial witnesses noted Hernandez's presence at the Sam's warehouse, observing the loaded trailer, instructing the driver, and debating payment with Arredondo, his loader. Accordingly, we do not believe the jury verdict to be so contrary to the great weight and preponderance of the evidence as to be unjust to Ojeda.

Because we believe the evidence to be both factually and legally sufficient to support the

jury's verdict, we overrule Ojeda's second point of error.

## Conclusion

Overruling both points of error, we affirm the trial court's judgment.