Brenda WALSH, et al., Plaintiffs,

v.

AMERICA'S TELE–NETWORK CORPORATION and Integretel, Inc., Defendant.

No. 1:99CV–833.

United States District Court, E.D. Texas, Beaumont Division.

April 4, 2002.

Richard Lyle Coffman, Richard L. Coffman P.C., Beaumont, TX, for plaintiff.

Charles Herold Helein, Helein Law Group, McLean, VA, Quentin R. Corrie, Anderson & Corrie, Fairfax, VA, for American's Tele–Network, defendant.

Lawrence James Simmons, Jr., Sandra Jean Howard, Germer & Gertz, Beaumont, TX, Richard H. Gordin, Tighe, Patton & Babbin, Washington, DC, for Integretal Inc., defendant.

## *OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS*

SCHELL, District Judge.

This matter is before the court on the remaining issues in "Defendant America's Tele–Network Corporation's Motion to Dismiss Under Rule 9(b), Rule 12(b)(6) and the Filed Tariff Doctrine, or in the Alternative, Referral to Federal Communications Commission and/or the Texas Public Utilities Commission" (Dkt.# 9), filed by America's Tele–Network Corp. ("ATN") on June 1, 2000, and "Defendant Integretel, Inc.'s Motion to Dismiss Under Rule 12(b)(6) and Rule 9(b)" (Dkt.# 18), filed by Integretel on July 28, 2000. Plaintiffs filed a response to defendants' Mo-

tions to Dismiss (Dkt # 22) on August 21, 2000. Integretel filed its reply (Dkt # 24) and ATN filed its reply (Dkt # 23) on August 31, 2000. On November 21, 2000, this court issued an "Opinion and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss", in which the court reserved a ruling on the plaintiffs' RICO claims pending the plaintiffs filing of a RICO case statement.[1] The plaintiffs have since filed "Representative Plaintiffs' RICO Case Statement" (Dkt.# 38) along with "Representative Plaintiffs' Second Amended Class Action Complaint" (Dkt.# 39). Defendants ATN and Integretel have both filed responses to plaintiffs' RICO Case Statement. On February 28, 2001, ATN filed "Defendant America's Tele–Network Corporation's Motion to Dismiss, or in the Alternative, Motion to Refer to the Federal Communications Commission" (Dkt.# 51). On March 14, 2001, Integretel filed "Defendant Integretel Incorporated's Motion to Dismiss Second Amended Complaint" (Dkt.# 54). Plaintiffs filed a response to the motions to dismiss on May 23, 2001 (Dkt.# 63). ATN filed a reply to plaintiffs' response on June 4, 2001. Integretel filed a reply to plaintiffs' response on June 29, 2001. Upon consideration of the motions, responses, replies, RICO Case Statement, Second Amended Complaint, and applicable law, the court is of the opinion that ATN's motion should be GRANTED in part and DENIED in part and Integretel's motion should be GRANTED in part and DENIED in part.

## I. BACKGROUND

When the motions to dismiss were originally filed, plaintiffs had alleged six separate RICO counts. However, in plaintiffs' second amended complaint they remove all but two of the RICO counts. Count I alleges a violation of 18 U.S.C. § 1962(c). Count II alleges a conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d). The RICO Counts are based upon violations of the Mail Fraud Act, 18 U.S.C. § 1341, the Wire Fraud Act, 18 U.S.C. § 1343, and 18 U.S.C. § 2314 relating to the interstate transportation of stolen property. Count III alleges a violation of the Communications Act, 47 U.S.C. § 151, *et seq.* Unlike the First Amended Complaint, however, the Communications Act claim is brought against only ATN. Count IV alleges breach of contract against both defendants. Count V alleges tortious interference with a contract and/or existing business relationship against Integretel only. Count VI alleges conversion against both defendants. Count VII alleges civil conspiracy against both defendants. Count VIII alleges unjust enrichment against both defendants.

## II. STANDARD FOR MOTION TO DISMISS

For this court to dismiss any particular claim in plaintiffs' complaint, it must appear to a certainty that the plaintiffs can prove no set of facts in support of that claim. FED.R.CIV.P. 12(b)(6) provides that a party may move a court to dismiss an action for "failure to state a claim upon which relief can be granted." On motion under Rule 12(b)(6), the court must decide whether the facts alleged, if true, would entitle the plaintiff to some legal remedy. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal is proper only if there is either (1) "the lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri*

---

**1.** The court also issued an order on November 21, 2000, ordering the plaintiffs to file a RICO case statement.

*v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988). "Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017 (5th Cir.1996).

The court must accept as true all material allegations in the complaint as well as any reasonable inferences to be drawn from them. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982). The well-pleaded facts must be reviewed in the light most favorable to the plaintiff. *See Piotrowski v. City of Houston,* 51 F.3d 512, 514 (5th Cir.1995).

■ In addition to the general standard for a motion to dismiss, the Fifth Circuit has held that when RICO claims are based upon allegations of fraud, rule 9(b) applies and the predicate acts alleged must be plead with particularity. In this case, the predicate acts upon which the plaintiffs rely are wire and mail fraud. To properly plead RICO claims under Rule 9(b), the plaintiffs must plead the time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what the person obtained by the representations. *See Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir.1997). These requirements are an exception to the general notice pleading requirement under Rule 8 and will be looked at in concert with the elements of the predicate acts.

### III. ANALYSIS

#### A. The RICO Claims

Plaintiffs have alleged RICO violations under 18 U.S.C. § 1962(c) and (d). Essentially, these subsections provide that: (c) a person who is employed by or associated with an enterprise cannot conduct the af-

fairs of the enterprise through a pattern of racketeering activity; and (d) a person cannot conspire to violate subsections (a), (b), or (c). *Crowe v. Henry,* 43 F.3d 198, 203 (5th Cir.1995).

■ To plead a RICO claim under section 1962, the plaintiffs must allege (1) the conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *See Old Time Enter. v. Int'l Coffee Corp.,* 862 F.2d 1213, 1217 (5th Cir.1989). Additionally, the plaintiffs must show that they were injured in their business or property by reason of the RICO violations. *See* 18 U.S.C. § 1964(c). Thus, the plaintiffs must also satisfy the elements of injury and causation. *See Price v. Pinnacle Brands, Inc.,* 138 F.3d 602, 606 (5th Cir. 1998). Further, as stated above, in this case the requirements of Rule 9(b) are implicated because the predicate racketeering activities alleged are wire and mail fraud, which trigger the elevated pleading requirements. *See Tel–Phonic Services, Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1138 (5th Cir.1992).

■ Accordingly, plaintiffs must plead their fraud-based RICO claims with particularity. The elements of a properly plead mail fraud claim under 18 U.S.C. § 1341 are (1) the defendant's participation in some scheme or artifice to defraud, (2) the use of the mails "caused by" defendant or someone associated with the scheme, and (3) the use of the mails for the purpose of executing the scheme. *See United States v. Davis,* 752 F.2d 963, 970 (5th Cir.1985). The elements of a wire fraud claim under 18 U.S.C. § 1343 are the same as those for a mail fraud claim except the use of the wire must be interstate. *See Smith v. Ayres,* 845 F.2d 1360, 1366 (5th Cir.1988). It is under this framework, and the application of these elements with respect to the particularity requirement of Rule 9(b), that the court must analyze

plaintiffs' complaint to determine if the predicate acts of mail and wire fraud are adequately plead.

Count I alleges that Defendants and Individuals violated 1962(c).

■ 18 U.S.C. § 1962(c) provides that: It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Under this section, the person and the enterprise must be distinct entities. *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 583 (5th Cir.1992). That is, the person and the enterprise cannot be the same. Further, the person in a RICO claim is the defendant or the person that committed the RICO violations. *See Crowe*, 43 F.3d at 204.

■ Count I alleges that ATN, Integretel, and the "Individuals"[2] associated with the "Long Distance Enterprise" committed the predicate acts through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). For purposes of Count I, plaintiffs define the RICO "persons" to be ATN, Integretel, and the "Individuals". The "enterprise" for purposes of Count I is the "Long Distance Enterprise." Plaintiffs make a distinction between the enterprise and the person. Also, according to the plaintiffs, while the "Long Distance Enterprise" allegedly existed for the purpose of racketeering activity (Second Amended Complaint at ¶ 28), employees of ATN and Integretel also engaged in legitimate business activities. (Second Amended Complaint at ¶ 35) Therefore, under Count I, plaintiffs have satisfied the requirement that the person and the enterprise cannot be the same.

■ The basic requirements of injury and causation under Count I are met by plaintiffs with enough specificity in their Second Amended Complaint to overcome defendants' motions to dismiss. Plaintiffs sustained financial injury consisting of the difference between the ATN tariff and the amounts billed and collected by defendants. This injury was allegedly caused by defendants billing practices. (Second Amended Complaint at ¶ 90).

■ Plaintiffs also sufficiently allege the conduct of an enterprise through a pattern of racketeering activity. The conduct of the "Long Distance Enterprise" is described in Representative Plaintiffs' Second Amended Class Action Complaint at pages 11 and 12. Plaintiffs assert the racketeering activity consists of both mail fraud and wire fraud. Plaintiffs sufficiently plead a pattern of such activity by describing various communications, including billing statements and telephone solicitation calls, between defendants and plaintiffs in furtherance of the "Long Distance Enterprise". (Second Amended Complaint at ¶ s 39 and 40).

Additionally, plaintiffs claim that ATN and Integretel committed the predicate acts. These alleged predicate acts consist of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. These predicate

---

**2.** The "Individuals" are defined in Plaintiffs' Second Amended Class Action Complaint as "certain officers, directors, employees, agents, and representatives of the named defendants." Representative Plaintiffs' Second Amended Class Action Complaint at page 5. This definition is expanded upon to include "High level executives", "In-house solicitation and customer service personnel", "In-house accounting and billing personnel" and "Other personnel". Representative Plaintiffs Second Amended Class Action Complaint at pages 12 and 13.

acts are pled with sufficient particularity under Rule 9(b). Plaintiffs describe specific instances in which the mail or wires were used by defendants in execution of the scheme to defraud. (Second Amended Complaint at ¶ s 39 and 40).

Plaintiffs allege in paragraph two of their Second Amended Complaint that the "Long Distance Enterprise" is an "association-in-fact" enterprise. An association-in-fact enterprise under 18 U.S.C. § 1961(4) "(1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization, and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Crowe,* 43 F.3d at 205. Plaintiffs "must plead specific facts that establish an association that exists other than merely to commit the predicate acts that show pattern." *Old Time Enter.,* 862 F.2d at 1217–18. Plaintiffs specifically state in their "Representative Plaintiffs' Second Amended Class Action Complaint" at paragraph 28 and in their "Representative Plaintiffs RICO Case Statement" at page 12 filed with the court, "At all relevant times, the purposes of the Long Distance Enterprise were (and continue to be) (i) generating inflated revenues and profits by engaging in the unlawful scheme of billing and collecting fees and charges in excess of those stated in the ATN tariff, (ii) defrauding, cheating, and stealing from the Representative Plaintiffs and Class members, and (iii) concealing the Long Distance Enterprise and Long Distance Enterprise scheme." Thus, plaintiffs explicitly allege that the "Long Distance [association-in-fact] Enterprise" exists only for the purpose of committing the predicate acts of mail fraud and wire fraud. That is, this "association in fact" enterprise has no existence separate and apart from the pattern of racketeering. Therefore, plaintiffs have failed to state a claim for violation of 18 U.S.C. § 1962(c) against ATN and Integ-

retel, and the defendants' motions to dismiss Count I are GRANTED.

Count II alleges that ATN, Integretel, and the "Individuals" conspired to violate 1962(c) in violation of 1962(d).

18 U.S.C. § 1962(d) provides that:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(d). Count II alleges a conspiracy to violate § 1962(c) as set forth in Count I. However, because Count I fails to state a claim upon which relief can be granted, Count II necessarily also fails to state a valid claim. Therefore, the defendants' motions to dismiss Count II are GRANTED.

### B. Communications Act Claim

Count III alleges a violation of the Communications Act, 47 U.S.C. § 151 *et seq.,* against ATN. The Communications Act states in part, "no carrier shall charge, demand, collect, or receive a greater or less or different compensation ... for any service ..." other than set forth in the tariff. 47 U.S.C. § 203. Plaintiffs expressly waive their right to file a complaint with the FCC, and instead bring this action for damages under 47 U.S.C. § 207. ATN is a common carrier, and therefore the Communications Act applies to ATN. For the reasons stated in the court's earlier "Opinion and Order Granting in Part and Denying in Part Defendants Motions to Dismiss" signed November 21, 2000 (November 21, 2000 Order), plaintiffs have stated a claim against ATN for violation of the Communications Act. Therefore, defendants' motions to dismiss Count III are DENIED.

## C. Breach of Contract Claim

 Count IV alleges breach of contract against both ATN and Integretel. With respect to ATN, the Second Amended Complaint states, "By virtue of its status as a common carrier subject to the Communications Act, and as governed by the ATN tariff, ATN was (and continues to be) in a contractual relationship with the Representative Plaintiffs and Class members." Plaintiffs Second Amended Class Action Complaint, ¶ 74. The ATN tariff is a mutually binding contract between plaintiffs and ATN. Plaintiffs allege ATN breached the contract by charging a higher rate than contained in the ATN tariff. As this Court has stated previously in its November 21, 2000 Order, because ATN is a party to the contract, plaintiffs have stated a claim for breach of contract against ATN.

 Plaintiffs' Second Amended Complaint also states, "By virtue of its agency relationship with ATN, and the receipt of the assignment of ATN's contractual rights with the Representative Plaintiffs and Class members, Integretel also was (and continues to be) in a contractual relationship with the Representative Plaintiffs and Class members." Plaintiffs' Second Amended Class Action Complaint, ¶ 74. Integretel argues it did not enter into a contractual relationship with plaintiffs and thus cannot be liable for breach of contract. Further, although plaintiffs state Integretel assumed rights under ATN's contract, Integretel avers plaintiffs never claim Integretel assumed any of ATN's obligations under the contract. Integretel states that its function was to provide billing services to ATN, and if it breached its contract in that regard it would be liable to ATN, not plaintiffs.

 Plaintiffs contend that Integretel, as an agent of ATN under the contract, exceeded its authority, and thus became personally liable under the contract. "Generally, an agent will not be personally liable on a contract made for his principal if the agent is acting within the scope of his authority." *Hartford Cas. Ins. Co. v. Walker County Agency, Inc.*, 808 S.W.2d 681, 687 (Tex.App.-Corpus Christi, 1991, no writ). However, "when an agent exceeds his authority under the agency agreement ... he becomes personally liable." *Id.* Plaintiffs argue Integretel's agency relationship with ATN and the assignment of ATN's contractual rights with plaintiffs make Integretel liable to plaintiffs for breach of contract. This argument is a mis-characterization of *Hartford.* In that case, the court determined the agent could be liable to its principal for exceeding its authority, not to a third party. *Id.* Applying the Rule 12(b)(6) standard to the pleadings at hand, plaintiffs have failed to state a claim for breach of contract against Integretel. The court reaffirms its ruling on this claim as set forth in its November 21, 2000 Order. Therefore, defendants' motions to dismiss Count IV with respect to ATN are DENIED, but are GRANTED with respect to Integretel.

## D. Tortious Interference with a Contract Claim

 Count V alleges Integretel tortiously interfered with plaintiffs' contract with ATN. In order to sufficiently plead tortious interference with a contract and/or existing business relationship, four factors must be met. "A case of wrongful interference with a contract is established by findings that: (1) a contract existed that was subject to interference; (2) the act of interference was willful and intentional; (3) such intentional act was a proximate cause of the plaintiff's damages; and (4) actual damages or loss occurred." *Schoellkopf v. Pledger*, 778 S.W.2d 897, 900 (Tex. App.-Dallas 1989, writ denied). Plaintiffs have plead sufficiently to avoid dismissal

under Rule 12(b)(6). Plaintiffs have alleged (1) a contract existed between plaintiffs and ATN, referred to as the ATN tariff; (2) Integretel determined the fees ATN's customers (including plaintiffs) should be billed; (3) Integretel wilfully and intentionally interfered with the contract by unlawfully over-billing plaintiffs in excess of the ATN tariff; and (4) this over-billing was the proximate cause of damages suffered by plaintiffs by way of the resulting monetary loss to plaintiffs. Plaintiffs have stated a cause of action against Integretel for tortious interference with a contract and/or existing business relationship. Therefore, defendants' motions to dismiss Count V are DENIED.

### E. Conversion Claim

Count VI alleges the tort of conversion against both ATN and Integretel. The tort of conversion is established by proving (1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant exercised control over the property in a manner inconsistent with plaintiff's right; (3) plaintiff made a demand for return of the property; and (4) defendant refused to return the property. *See Ojeda v. Wal–Mart Stores,* 956 S.W.2d 704, 707 (Tex.App.-San Antonio 1997, writ denied). Plaintiffs' pleading states, "By wrongfully and improperly billing and collecting Carrier Line Charges and Universal Service Fund Charges from the Representative Plaintiff and Class members in excess of the amount stated in the ATN tariff, the Defendants are unlawfully and wrongfully exercising dominion and control over funds owned by the Representative Plaintiff and Class members in defiance of their right to possess and use such funds." Representative Plaintiffs' Second Amended Class Action Complaint, ¶ 82. Plaintiffs have succeeded in stating a claim for the tort of conversion against both ATN and Integretel. Therefore, defendants' motions to dismiss Count VI are DENIED.

### F. Civil Conspiracy Claim

Count VII alleges civil conspiracy against both ATN and Integretel. Plaintiffs state, "The Defendants and Individuals, either working together as a combined group or in sub-combinations of two or more, conspired to commit the wrongful actions outlined in Counts III–VI, above, all of which directly and proximately caused the Representative Plaintiff and Class members to sustain damages in the form of excessive Carrier Line Charges and Universal Service Fund Charges." Representative Plaintiffs' Second Amended Class Action Complaint, ¶ 85. Civil conspiracy is defined as "a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996); *see also, Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). The elements of a civil conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey,* 652 S.W.2d at 934. In addition, "civil conspiracy requires specific intent. For a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement." *Triplex Communications Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex.1995).

Civil conspiracy is an entirely derivative claim. A plaintiff must "plead and prove another substantive tort upon which to base a civil conspiracy claim." *Grizzle v. Texas Commerce Bank,* 38 S.W.3d 265, 285 (Tex.App.-Dallas, 2001). Here, plaintiffs allege a conspiracy to commit the acts discussed in Counts III–VI.

In order to satisfy the first element for a civil conspiracy, the underlying tort claim must be made against at least one of the defendants. "A defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton*, 925 S.W.2d at 681. Count III alleges breach of the Communications Act, 47 U.S.C. § 151 *et seq.*, against ATN. As Count III does not involve a tort, it cannot support a claim for civil conspiracy. *See id.* Count IV alleges breach of contract. Noting the need for an underlying tort, the court in *Grizzle v. Texas Commerce Bank*, held, "[b]ecause breach of contract is not a tort, it will not support a civil conspiracy." *Grizzle*, 38 S.W.3d at 285. Therefore, Count IV cannot support a claim of civil conspiracy. Count V alleges tortious interference with a contract and/or existing business relationship against Integretel. As Count V is a tort alleged against at least one defendant, it can support a claim of civil conspiracy. Count VI alleges the tort of conversion against both defendants. As Count VI is a tort alleged against at least one defendant, this count can support a claim of civil conspiracy as well. Therefore, plaintiffs have stated a claim of civil conspiracy against both defendants. Defendants motions to dismiss Count VII are DENIED.

### G. Unjust Enrichment Claim

Count VIII alleges unjust enrichment against both ATN and Integretel. Plaintiffs state, "By virtue of their above wrongful actions, the Defendants, at the very least, have been unjustly enriched by (i) the Carrier Line Charges and Universal Service Fund Charges billed and collected in excess of the amounts set forth in the ATN tariff, and (ii) the Defendants' return on investment on such amounts. Accordingly, the Representative Plaintiffs, for their benefit and the benefit of the Class members, seek to impose a constructive trust over (and recover) all amounts by which the Defendants have been unjustly enriched." Representative Plaintiffs' Second Amended Class Action Complaint, ¶ 88. Both ATN and Integretel present arguments for dismissing this claim.

"A party may recover under the unjust enrichment theory when one person obtains a benefit from another by fraud, duress, or the taking of undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Claims for unjust enrichment are based on quasi-contract. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex.2000). "Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune*, 52 S.W.3d at 684. Integretel avers plaintiffs cannot recover under a theory of unjust enrichment because the alleged wrongdoing is derived from the subject of an express contract. There are, however, exceptions to this general rule. A claim for unjust enrichment may be had where overpayment was made under a valid contract. *See Southwestern Elec.Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 469 (Tex.1998). As the Supreme Court of Texas has stated, "it has been declared that a cause of action for money had and received is 'less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which belongs to the plaintiff.'" *Staats v. Miller*, 150 Tex. 581, 243 S.W.2d 686, at 687–88, (quoting *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 54 S.Ct. 443, 449, 78 L.Ed. 859 (1934)).

The *Staats* case was a suit for damages over the alleged conversion of a cotton

harvester. Under the facts of the case, plaintiffs Staats and Woolbright bought a cotton harvester from defendant Miller in 1948 for $500 cash, and executed a note for $755, with each plaintiff owing half the note. In March of 1949, Staats paid off his half of the note, and Woolbright paid his down to $200. In September of 1949, plaintiffs took the harvester to defendant's place of business for repairs. Plaintiffs told Miller that if he could sell the harvester after it was repaired for as much as $1,000 then plaintiffs would authorize him to do so, and if Miller could get more than $1,000, Miller could keep the same as a commission for the sale. The $1,000 would be split $500 each to Staats and Woolbright, minus $200 Woolbright owed on the note. Thereafter Miller sold the harvester but refused to tell Staats and Woolbright to whom he sold it or for how much. Miller also refused to acknowledge plaintiffs had a right to either the proceeds from the sale or the harvester. Plaintiffs then sued for $1500 actual damages and $500 exemplary damages. *See Staats*, 243 S.W.2d, at 688. The court held that plaintiffs had adequately plead overpayment on the contract, and thus the case fell within the exception. *See id.*

Here, Plaintiffs have plead overpayment with sufficient specificity to avoid dismissal under Rule 12(b)(6). The complaint describes in detail the representations made to Walsh by ATN, as well as the billing statement sent to Walsh as a result of one 22 minute long distance phone call. *See* Representative Plaintiffs' Second Amended Class Action Complaint, ¶ 13–17. In addition, the complaint describes both the representations made in the solicitation by ATN as well as three instances where Denton was allegedly overbilled. *See* Representative Plaintiffs' Second Amended Class Action Complaint, ¶ 18–22. Further, the complaint twice states that these charges were paid. *See* Representative Plaintiffs' Second Amended Class Action Complaint, ¶ 3, 17. Therefore, plaintiffs have stated a claim for unjust enrichment against the defendants. Defendants' motions to dismiss Count VIII are DENIED.

**H. Motion to Refer to the Federal Communications Commission**

Along with ATN's motion to dismiss, ATN filed a motion in the alternative to refer the matter to the Federal Communications Commission ("FCC") under the doctrine of primary jurisdiction. For the reasons stated in the court's November 21, 2000 Order, ATN's motion to refer to the FCC is DENIED.

**IV. CONCLUSION**

Therefore, upon consideration of ATN's and Integretel's motions to dismiss, the court is of the opinion that those motions should be GRANTED IN PART and DENIED IN PART as set forth above. As a result of this order, the following claims remain in this lawsuit: the Communications Act claim against ATN; the breach of contract claim against ATN; the tortious interference with contractual relations claim against Integretel; the conversion claim against both ATN and Integretel; the civil conspiracy claim against both ATN and Integretel; and the unjust enrichment claim against both ATN and Integretel.

It is so ORDERED.